UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
FILED

APR 2 7 2026

NATHAN OCHSNER
CLERK OF COURT

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF TEXAS**

**BROWNSVILLE DIVISION**

JOSEPH ANTHONY REYNA,

   Plaintiff,

v.

SPACE EXPLORATION TECHNOLOGIES CORP.,

a Delaware corporation,

   Defendant.

1:25-cv-250

Civil Action No. _____ (Assigned upon docketing)

**PLAINTIFF'S NOTICE OF MATERIAL DEVELOPMENTS, REQUEST FOR**

**JUDICIAL NOTICE UNDER FED. R. EVID. 201(b)(2), AND NARROW REQUEST**

**FOR JUDICIAL CLARIFICATION**

Non-Merits — Informational — No Monetary Relief Requested

## BOTTOM LINE FOR THE COURT

Four categories of publicly confirmed developments bear on penalty factors and preservation obligations already pleaded: (1) a $100+ million cross-entity Cybertruck transaction between Defendant and Tesla, Inc.; (2) Defendant's confidential $1.75 trillion IPO registration, including a triangular merger with xAI structured to limit liability attribution; (3) a documented pattern of parallel regulatory events at three Musk-controlled Texas and Tennessee/Mississippi facilities, including a cease-and-desist from Nueces County Drainage District No. 2 issued April 2026 for discharge of hexavalent chromium and arsenic at Defendant's affiliated Tesla Robstown refinery; and (4) concurrent state and federal

1

proceedings bearing on the same statutory framework. Plaintiff requests judicial notice and narrow procedural clarification on three points already raised in the Complaint. No new claims. No new preservation obligations. No discovery requested.

**ISSUE MAP**

**Nature of filing:** Notice. No new affirmative relief is requested. Plaintiff explicitly attributes no bad faith to any individual.

**What this Notice does:** (i) identifies four categories of public developments bearing on CWA § 309(d) mandatory penalty factors already pleaded (Complaint ¶¶ 35, 35A) and on the Count VI APA and constitutional framing; (ii) requests judicial notice under FRE 201(b)(2); (iii) confirms preservation scope consistent with Complaint § VII; (iv) reserves additional federal, treaty, and constitutional authorities; and (v) requests three narrow procedural clarifications already raised in the Complaint.

**What this Notice does not do:** Assert new causes of action; seek discovery; seek monetary relief; amend the Complaint; or request adjudication of any merits issue.

**I. INTRODUCTION**

1. Plaintiff Joseph Anthony Reyna, proceeding pro se, submits this Notice pursuant to Federal Rule of Evidence 201(b)(2) and the Court's inherent authority to manage its docket. The Notice identifies material public developments bearing on penalty factors and preservation obligations already pleaded in the Verified Complaint filed April 22, 2026.

**II. MATERIAL DEVELOPMENT NO. 1 — THE SPACEX/TESLA CYBERTRUCK TRANSACTION**

2. On April 16, 2026, Bloomberg News, citing S&P Global Mobility vehicle registration data, reported that Defendant registered 1,279 Cybertrucks in Q4 2025 — more than 18% of the 7,071 U.S. Cybertruck registrations in that quarter — with 158 additional registrations in

January 2026 and 67 in February 2026. At the $79,990 base price, Q4 2025 purchases alone imply a minimum transaction value of approximately $100 million, paid from Defendant's operating accounts to Tesla, Inc., a separately publicly-traded entity under the common CEO control of Elon Musk. Bloomberg's reporting was independently confirmed by Electrek and AutoGuide.com on the same dates.

3. These facts bear on Complaint ¶¶ 33, 34 (Statements 1–4), 35, and 35A as relevant to the CWA § 309(d) mandatory penalty factors of (a) economic benefit of noncompliance, (b) ability to pay, (c) attitude of the violator toward compliance, and (d) history of prior violations. These facts are also relevant to the Count VI APA framing. No inference of fraud is attributed by this Notice.

## III. MATERIAL DEVELOPMENT NO. 2 — DEFENDANT'S CONFIDENTIAL SEC IPO FILING AND xAI TRIANGULAR MERGER

4. On or about April 1, 2026, Defendant submitted draft IPO registration documents to the SEC pursuant to 15 U.S.C. § 78o-4, as confirmed by Bloomberg, CNBC, Reuters, and The Wall Street Journal. Defendant is reported to be targeting a June 2026 listing at a valuation of approximately $1.75 trillion. SEC rules require release of a public Form S-1 not less than fifteen (15) days before the IPO roadshow.

5. On February 2, 2026, Defendant acquired xAI Corp. in an all-stock transaction structured as a triangular merger, with xAI becoming a wholly-owned subsidiary. Public reporting confirms the triangular structure was selected, inter alia, to limit Defendant's "risk exposure to any liabilities or debts tied to xAI." The combined enterprise valuation was reported at approximately $1.25 trillion. This fact is informational only; it is relevant to preservation scope and to the CWA § 309(d) attitude factor as reflecting governance-level risk-allocation practices contemporaneous with this action.

6. Defendant's duty to preserve evidence attached no later than October 28, 2025 (Complaint ¶ 51). Two preservation-related observations arise from the pre-IPO posture:

(a) Pre-IPO companies routinely undergo intensive document-retention audits during SEC registration review. Records within the scope of Complaint ¶ 51(1)–(6) are at heightened operational risk during this process, notwithstanding preservation obligations.

(b) Defendant's forthcoming public S-1 will contain disclosures — related-party transaction schedules, environmental risk factors, and regulatory-proceeding disclosures — that will constitute party admissions under Fed. R. Evid. 801(d)(2). Plaintiff reserves the right to supplement upon release.

## IV. MATERIAL DEVELOPMENT NO. 3 — CONTEMPORANEOUS PARALLEL REGULATORY EVENTS AT OTHER MUSK-CONTROLLED FACILITIES

7. Between February and April 2026, three publicly documented regulatory events involving other Musk-controlled entities occurred in patterns materially similar to those pleaded in this action. Each is offered for its relevance to CWA § 309(d) "attitude toward compliance" and "history of violations" factors and to Count VI regulatory-capture analysis. Plaintiff does not attribute liability to, or join, any non-party entity.

### A. Tesla Robstown Lithium Refinery — Nueces County Drainage District No. 2 Cease-and-Desist

8. In April 2026, Nueces County Drainage District No. 2 issued a cease-and-desist letter to Tesla, Inc. after independent laboratory testing by Eurofins Environment Testing detected hexavalent chromium (a known human carcinogen) and arsenic in wastewater discharged from Tesla's Robstown lithium refinery into the district's drainage ditch at approximately 231,000 gallons per day. Neither hexavalent chromium nor arsenic is identified as an authorized pollutant in Tesla's TCEQ-issued permit. TCEQ conducted its own investigation in February

4

2026 and found Tesla "in compliance" with the permit, but did not test for heavy metals. Lithium itself is not in the permit's monitoring requirements. The discharge flows to Petronila Creek and Baffin Bay, a public fishery.

9. The operational and regulatory pattern — TCEQ review under a permit that does not require testing for the pollutants actually present, followed by a "compliance" finding, followed by post-hoc discovery of unpermitted heavy-metal discharge by an independent third party — materially parallels the Starbase regulatory pattern pleaded in Complaint ¶¶ 18–28 (CAFO Events 1–8; TCEQ abatement with no sampling; attorney-privileged records absence).

### B. NAACP v. xAI, MZX Tech LLC — N.D. Miss. (Filed April 14, 2026)

10. On April 14, 2026, the NAACP filed a federal Clean Air Act citizen suit in the United States District Court for the Northern District of Mississippi against xAI Corp. and its subsidiary MZX Tech LLC, alleging operation of 27 unpermitted methane gas turbines at the Colossus 2 data center in Southaven, Mississippi, with potential annual emissions of approximately 1,700 tons of nitrogen oxides, 180 tons of fine particulate matter, 500 tons of carbon monoxide, and 19 tons of formaldehyde. xAI is, as of February 2, 2026, a wholly-owned subsidiary of Defendant. The EPA, in January 2026, ruled that the turbines are subject to Clean Air Act permitting requirements.

11. The NAACP action alleges the same category of citizen-suit conduct — operation of a significant pollutant source without the required federal permit — that Plaintiff alleges here under Count V (CAA § 304) and Count I (CWA § 505). It is relevant to Defendant's governance-level attitude toward environmental permitting obligations across the corporate family now consolidated under the pre-IPO structure.

### C. Austin Gigafactory — Travis County Partial-Noncompliance Finding

12. On April 8, 2026, the Travis County Commissioners Court voted 4–0 to withhold 9% of Tesla's tax-rebate funds for 2020–2022 based on partial noncompliance findings, including the

5

contractual Green Building Program "environmentally conscientious manner" requirement and related construction and wage provisions. Separately, in 2024, Tesla used Texas Senate Bill 2038 to remove approximately 2,100 acres of Giga Texas from the City of Austin's extraterritorial jurisdiction, eliminating applicability of city environmental regulations. Austin Water has reported that Tesla's annual treated-water consumption rose approximately 60% from 2023 to 2025, making Tesla Austin Water's third-largest customer during a documented drought.

13. This pattern — jurisdictional removal from local environmental oversight via state legislative mechanism, followed by partial-compliance findings on the remaining contractual environmental obligations — materially parallels the Starbase pattern of municipal enforcement-authority consolidation through HB 5246 pleaded in Complaint ¶¶ 18, 48 and Count VII (Public Trust / First Amendment).

### D. Relevance to CWA § 309(d) and Count VI

14. Taken together, these three events document a contemporaneous cross-facility pattern relevant to the statutorily mandatory § 309(d) factors of "attitude toward compliance" and "history of prior violations." No legal conclusion of liability is asserted as to any non-party; each event is offered solely for its evidentiary relevance to the factors pleaded in this action.

## V. MATERIAL DEVELOPMENT NO. 4 — CONCURRENT JUDICIAL AND ADMINISTRATIVE PROCEEDINGS

### A. Save RGV v. Texas General Land Office — Texas Supreme Court (Argued March 5, 2026)

15. On March 5, 2026, the Supreme Court of Texas heard oral argument in Save RGV, et al. v. Texas General Land Office, et al., a constitutional challenge to Tex. Nat. Res. Code §§ 61.132–61.133 (enacted by HB 2623, 2013) as applied to Boca Chica Beach closures for SpaceX launch operations, under the Texas Open Beaches Amendment, Tex. Const. art. I, §

33. Plaintiffs include Save RGV, the Sierra Club, and the Carrizo/Comecrudo Tribe of Texas. A ruling is pending. That ruling, once issued, would be supplemental authority directly bearing on Count VII of the Complaint (challenging HB 5246 as an extension of the same statutory framework). Plaintiff respectfully reserves the right to supplement upon the Texas Supreme Court's decision.

## B. FAA Final Tiered EA and FONSI/ROD — Federal Register Docket No. FAA-2025-3124

16. On February 19, 2026, the FAA published in the Federal Register a Final Tiered Environmental Assessment and Finding of No Significant Impact/Record of Decision for updates to airspace closures and Starship Boca Chica landing profiles (91 Fed. Reg. ___, Doc. 2026-03291). That FONSI expressly relies on Executive Order 14335 (Aug. 13, 2025) as a statement of national purpose and applies the February 25, 2025 CEQ interim final rule rescinding prior NEPA implementing regulations (90 Fed. Reg. 10610). The FONSI is reviewable under the APA, 5 U.S.C. §§ 702, 706, and Plaintiff reserves the right to challenge it as part of Count VI, including under the major-questions doctrine and post-Loper Bright de novo review standards.

## C. U.S. Fish and Wildlife Service Proposed Land Exchange at Lower Rio Grande Valley National Wildlife Refuge

17. In March–April 2026, the U.S. Fish and Wildlife Service published and accepted public comment on a proposed exchange of approximately 712 acres of Lower Rio Grande Valley National Wildlife Refuge land (classified by USFWS as containing "high-quality" habitat) for approximately 692 acres of SpaceX-owned land (classified as "poor" to "medium quality," with reported degradation attributable to SpaceX operations). Public comment reflected 3,392 opposing submissions coordinated by the South Texas Environmental Justice Network, including the Carrizo/Comecrudo Tribe of Texas citing cultural significance. A proposed

FONSI has been issued. Plaintiff notes this proceeding for its relevance to the ESA Count IV pleading and the impending ripeness of additional APA challenges should the exchange be finalized.

## VI. FOUR PROCEDURAL OBSERVATIONS ON THE EXISTING RECORD

18. Plaintiff respectfully notes four internal tensions on the existing public record, each relevant to pleadings already before the Court. Each is stated neutrally; no bad faith is attributed.

(a) **The CAFO-shield observation.** CWA § 309(g)(6)(A) preclusion requires diligent prosecution. DOJ withdrew its $46.1 million SpaceX enforcement action within days of the January 2025 administration transition (Complaint ¶ 32). The durability of the shield depends on enforcement activity documented on the public record to have been discontinued.

(b) **The privileged-absence observation.** Texas AG Open Records Ruling OR2026-013537 (April 1, 2026) confirms TCEQ retained attorney guidance concerning how to respond to Plaintiff's SpaceX-related records requests (Complaint ¶ 28). The existence of privileged deliberations over record responses documents that the scope of available records is itself a deliberative outcome.

(c) **The disagree-but-settle observation.** Defendant publicly stated it "fundamentally disagreed with the allegations" (Complaint ¶ 34, Statement 3) but executed the CAFO, which under 40 C.F.R. § 22.18(b)(2) constitutes an admission of jurisdictional allegations and a waiver of the right to contest factual allegations. Public characterization and the legal effect of signature are distinct.

(d) **The threatened-but-unfiled observation.** Defendant's principal officer publicly announced intent to sue the FAA for "regulatory overreach" (Complaint ¶ 34, Statement 2). No such suit appears on the public docket. The public record

subsequently reflects approximately $300 million in election-related spending by the principal officer, followed by DOJ's withdrawal of the pending $46.1 million enforcement action. Plaintiff notes this sequence without attribution of motive; it is relevant to Count VI APA and Appointments Clause framing.

## VII. ILLUSTRATION FOR § 309(d) PENALTY CALIBRATION

19. CWA § 309(d) requires consideration of ability to pay and economic benefit of noncompliance. As of April 2026, publicly reported tracking indexes (Bloomberg Billionaires Index; Forbes Real-Time Billionaires List) identify Defendant's principal officer Elon Musk as the individual with the highest documented personal net worth on record, at approximately $400 billion. The EPA CAFO assessed $148,378 for eight documented unauthorized discharges. That penalty represents approximately 0.00004% of the principal officer's approximate net worth. Applied proportionally to median U.S. household net worth per the Federal Reserve Survey of Consumer Finances, the equivalent penalty would be approximately $0.37. This scaling is offered as contextual data only. Congress enacted citizen suits under 33 U.S.C. § 1365 with awareness that administrative penalty caps calibrated to ordinary corporate scale may fail to achieve deterrent effect at unprecedented ownership scale. Atlantic States Legal Foundation v. Tyson Foods, Inc., 897 F.2d 1128, 1142 (11th Cir. 1990).

## VIII. REQUEST FOR JUDICIAL NOTICE UNDER FED. R. EVID. 201(b)(2)

20. Plaintiff respectfully requests that the Court take judicial notice of the following facts, each capable of accurate and ready determination from sources whose accuracy cannot reasonably be questioned. Funk v. Stryker Corp., 631 F.3d 777, 783 (5th Cir. 2011):

(a) The S&P Global Mobility registration counts, Cybertruck transaction scale, and reported net worth of Defendant's principal officer, as published April 16, 2026 (Bloomberg News; Forbes; Bloomberg Billionaires Index);

9

(b) The fact and structure of Defendant's confidential IPO filing of approximately April 1, 2026, and the February 2, 2026 triangular merger under which xAI Corp. became a wholly-owned subsidiary of Defendant;

(c) The April 2026 Nueces County Drainage District No. 2 cease-and-desist letter and related Eurofins laboratory findings regarding the Tesla Robstown refinery, as reported by the Texas Tribune and Inside Climate News;

(d) The filing and docket of NAACP v. xAI, Inc., et al., in the United States District Court for the Northern District of Mississippi on April 14, 2026;

(e) The pendency before the Supreme Court of Texas of Save RGV, et al. v. Texas General Land Office, et al., argued March 5, 2026, as a proper subject of judicial notice of the existence and pendency of a parallel state judicial proceeding;

(f) FAA Final Tiered Environmental Assessment and Finding of No Significant Impact, Federal Register Docket No. FAA-2025-3124 (Feb. 19, 2026); and

(g) The April 8, 2026 vote of the Travis County Commissioners Court to withhold 9% of Tesla tax-rebate funds for partial noncompliance with 2020 incentive-agreement terms.

## IX. PRESERVATION SCOPE CONFIRMATION

21. Consistent with Complaint § VII and Plaintiff's October 28, 2025 litigation-hold notice, the following categories fall within Defendant's existing preservation obligations. No new preservation obligation is asserted.

(a) Internal communications, board minutes, officer-level resolutions, and authorizations concerning Cybertruck purchases by Defendant during Q4 2025 through Q2 2026, including operational-need analyses comparing Cybertruck to lower-cost alternatives;

(b) Invoices, contracts, pricing schedules, delivery records, registration documentation, and intercompany transfer documentation for Cybertruck transactions between Defendant and Tesla, Inc.;

(c) Documents concerning the February 2, 2026 xAI triangular merger, including transaction structure memoranda, risk-allocation analyses, and related-party disclosure determinations;

(d) Documents prepared in connection with SEC registration review referencing: (i) the June 18, 2025 Massey Site incident; (ii) EPA CAFO Docket No. CWA-06-2024-1768; (iii) TCEQ Docket No. 2024-1282-IWD-E; (iv) EPA Region 6 communications concerning Starbase; (v) environmental liabilities, remediation-cost estimates, or contingent liabilities attributable to Starbase; or (vi) regulatory-enforcement risk-factor disclosures; and

(e) Retention-schedule modifications, legal-hold notices, or retention-policy changes implemented in connection with pre-IPO document review to the extent they affect Complaint ¶ 51 records.

22. Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 218 (S.D.N.Y. 2003); Silvestri v. Gen. Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001).

## X. RESERVATION OF ADDITIONAL FEDERAL, STATE, TREATY, AND CONSTITUTIONAL AUTHORITIES

23. Without amending the Complaint or expanding the scope of relief requested, Plaintiff reserves all rights under additional authorities not expressly invoked in the original pleading, including but not limited to:

**Federal statutes:** Refuse Act of 1899, 33 U.S.C. § 407; Migratory Bird Treaty Act, 16 U.S.C. § 703; Marine Mammal Protection Act, 16 U.S.C. § 1361; Toxic Substances Control Act § 8(e), 15 U.S.C. § 2607(e); Coastal Zone Management Act, 16 U.S.C. §

1456; National Historic Preservation Act § 106, 54 U.S.C. § 306108; EPCRA § 304, 42 U.S.C. § 11004; False Claims Act, 31 U.S.C. §§ 3729–3733.

**Texas statutes and constitutional provisions:** Tex. Water Code §§ 7.302 and 26.121(b); Tex. Health & Safety Code §§ 361, 382, and 501; Tex. Nat. Res. Code § 61; Tex. Parks & Wildlife Code § 66; Tex. Local Gov't Code § 43 (annexation procedures); Tex. Const. art. I, §§ 19 (Due Course of Law) and 33 (Open Beaches); Tex. Const. art. III, § 51 (prohibition on gifts and grants to corporations).

**Treaty and customary international obligations:** Treaty on Principles Governing the Activities of States in the Exploration and Use of Outer Space (1967), art. VI; Treaty of Guadalupe Hidalgo (1848), arts. VIII and IX; customary international law concerning transboundary environmental harm (Trail Smelter Arbitration, 3 R.I.A.A. 1905 (1938, 1941)).

**Constitutional doctrines:** Guarantee Clause, U.S. Const. art. IV, § 4 (as revived in New York v. United States, 505 U.S. 144 (1992), and reviewable post-Luther v. Borden); public-function doctrine under Marsh v. Alabama, 326 U.S. 501 (1946), and Evans v. Newton, 382 U.S. 296 (1966); unconstitutional-conditions doctrine under Koontz v. St. Johns River Water Mgmt. Dist., 570 U.S. 595 (2013); dormant foreign affairs doctrine under Zschernig v. Miller, 389 U.S. 429 (1968); and the major-questions doctrine under West Virginia v. EPA, 597 U.S. 697 (2022), applied to Executive Order 14335's direction to "eliminate or expedite" NEPA environmental reviews absent specific congressional authorization.

## XI. NARROW REQUESTS FOR JUDICIAL CLARIFICATION

24. Consistent with Complaint § VIII, Plaintiff respectfully requests early procedural clarification on three threshold matters. Each serves docket economy.

(a) **Pre-suit notice sufficiency.** Whether the February 21, 2026 Notices of Intent to Sue (Complaint Exhibits A and H) and the supplemental CWA notice served April 22, 2026, collectively satisfy pre-suit notice requirements of CWA § 505(b)(1), ESA § 11(g)(2), and EPCRA § 326(a)(1)(B).

(b) **Scope of CWA § 309(g)(6)(A) preclusion.** Whether, on de novo review post-Loper Bright Enterprises v. Raimondo, 144 S. Ct. 2244 (2024), CWA § 309(g)(6)(A) precludes only civil-penalty claims for CAFO Events 1–8 through June 6, 2024, with injunctive relief preserved under CAFO ¶ 29 and all post-June 6, 2024 violations fully actionable.

(c) **Standing ADA accommodation order.** Whether the Court will enter the standing accommodation order requested at Complaint § VIII(3) (U.S. Mail-only communication; 14-day advance hearing notice; extended response periods; liberal pro se construction) for all proceedings in this action.

## XII. LIMITED PURPOSE

25. This Notice is submitted for the limited purpose of preserving an accurate procedural record, requesting judicial notice of undisputed public facts, reserving additional authorities, and requesting narrow procedural clarification on matters already raised. It does not supplement the pleadings, does not seek discovery, and does not ask the Court to draw any inference regarding the ultimate significance of any development described. Plaintiff reserves the right to supplement upon the release of Defendant's public Form S-1, the issuance of the Texas Supreme Court's ruling in Save RGV, and developments in parallel proceedings.

Respectfully submitted,

/s/ Joseph Anthony Reyna
**JOSEPH ANTHONY REYNA**

13

Plaintiff, Pro Se | JOECAT® | USPTO Reg. No. 6,057,783

5900 Balcones Dr #16077, Austin, TX 78731

whitehat@joecattt.com

*Paper mail only — ADA accommodation — 14-day hearing notice required*

Dated: April 24, 2026

## CERTIFICATE OF SERVICE

I certify that on April 24, 2026, I mailed the foregoing by U.S. Mail, postage prepaid, to the Clerk of Court, United States District Court, Southern District of Texas, Brownsville Division, 600 E. Harrison Street, Suite 101, Brownsville, TX 78520.

As of the date of this filing, Defendant has not yet appeared through counsel, and service of the Summons and Complaint remains pending perfection by the United States Marshal Service pursuant to 28 U.S.C. § 1915(d) and Fed. R. Civ. P. 4(c)(3). Accordingly, no service of this Notice upon Defendant is required at this time.

/s/ Joseph Anthony Reyna

Joseph Anthony Reyna (JOECAT®)

April 24, 2026

14



MAIL
United States District Court
Southern District of Texas

APR 27 2026

RECEIVED
Nathan Ochsner, Clerk of Court

Nathan Ochsner, Clerk of Court
United States District Court
600 E. Harrison St., Suite #101
Brownsville, TX 78520

Nonprofit Organization – Authorized by U.S. Postal Service